ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Association of Community Organizations for Reform Now :

Plaintiff : CA 06 208ML

vs. : C.A. No. 06-

TOWN OF EAST GREENWICH by and through its Town Council Members, Michael B. Isaacs, John M. McGurk, Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti in their official capacities, its CHIEF OF POLICE David Desjarlais in his official capacity and its FINANCE DIRECTOR Thomas Mattos in his official capacity :

Defendants :

PLAINTIFF'S MOTION FOR
A TEMPORARY RESTRAINING ORDER

This matter is before the Court on the Motion of Plaintiff Association of Community Organizations for Reform Now ("ACORN") for a temporary restraining order against the Defendants, their attorneys, officers, servants, employees and agents, and all persons acting in concert with them from a) requiring plaintiff to obtain and pay for a permit to conduct political canvassing for each of its canvassers; b) denying plaintiff the right to canvass until 9:00 p.m. and/or c) arresting, harassing or commencing criminal, civil, or administrative proceedings against the plaintiff, its canvassers, or any persons acting in concert with them based upon their conducting peaceful canvassing activities in the Town of East Greenwich before 9:00 p.m.

Because ACORN has a likelihood of success on the merits, will suffer irreparable harm if the restraining order is not granted, its injury outweighs any harm which granting injunctive relief would impose on the Defendants, and the public interest will not be adversely affected, this Court should issue a temporary restraining order against the Defendants.

In support of its motion, Plaintiff relies on its Memorandum of Law and Verified Complaint filed contemporaneously herewith. Plaintiff also relies on whatever further documentary or testimonial evidence and argument as may be offered at the time of hearing on this matter.

Plaintiff
By its Attorney:

CAROLYN A. MANNIS, ESQ. #4275
As volunteer attorney for the R.I. Affiliate of the American Civil Liberties Union
170 Westminster Street, Suite 800
Providence, RI 02903
401.454.4466 (Telephone)
401.351.3914 (Facsimile)

ORIGINAL

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

Association of Community Organizations for Reform Now :

Plaintiff : CA 06 208 ML

vs. : C.A. No. 06-

TOWN OF EAST GREENWICH by and through its Town Council Members, Michael B. Isaacs, John M. McGurk, Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti in their official capacities, its CHIEF OF POLICE David Desjarlais in his official capacity and its FINANCE DIRECTOR Thomas Mattos in his official capacity :

Defendants :

# PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR A TEMPORARY RESTRAINING ORDER

## INTRODUCTION AND APPLICABLE LAW

This matter is before the Court on the Motion of Plaintiff Association of Community Organizations for Reform Now ("ACORN") for a temporary restraining order against the Defendants, their attorneys, officers, servants, employees and agents, and all persons acting in concert with them from a) requiring plaintiff to obtain and pay for a permit to conduct political canvassing for each of its canvassers; b) denying plaintiff the right to canvass until 9:00 p.m. and/or c) arresting, harassing or commencing criminal, civil, or administrative proceedings against the plaintiff, its canvassers, or any persons acting in concert with them based upon their conducting peaceful canvassing activities in the Town of East Greenwich before 9:00 p.m.

The underlying complaint in this case is a civil action for injunctive and declaratory relief and damages. The Plaintiff, ACORN, is a non-profit organization dedicated to advancing the interests of low and moderate income people.

ACORN seeks to challenge the constitutionality of ordinances in the Town of East Greenwich prohibiting political canvassing in the Town after 7:00 p.m. Additionally, ACORN seeks to challenge the constitutionality of the permit requirement contained in East Greenwich's door-to-door solicitation ordinances as written and as applied. The plaintiff alleges that political canvassing is a form of expression protected by the First Amendment to the United States Constitution and Article I, Section 21 of the Rhode Island Constitution. Moreover, Plaintiff alleges that the time limitation violates its federally and state protected free speech rights.

Political canvassing is a form of expression protected by the First Amendment to the U.S. Constitution and Article I, Section 21 of the Rhode Island Constitution. For over 60 years, the U.S. Supreme Court has recognized the substantial First Amendment protection afforded to door-to-door solicitors. *See, e.g., Watchtower Bible v. Village of Stratton, 536 U.S. 150, 160 (2002); Murdock v. Pennsylvania, 319 U.S. 105 (1943).* At the same time, the U.S. Supreme Court has recognized the right and power of a municipality to regulate solicitation, but restrictions must be "narrowly drawn regulations designed to serve those interests without unnecessarily interfering with First Amendment freedoms." *Village of Schaumberg v. Citizens for a Better Environment*, 444 U.S. 620 (1980).

Sixty years ago, Justice Black in *Martin v. Struthers*, 319 U.S. 141, 147 (1943) found that, "the dangers of distribution can so easily be controlled by traditional legal methods, leaving to each householder the full right to decide whether he will receive strangers as visitors, that stringent prohibition can serve no purpose but that forbidden by the Constitution, the naked restriction of the dissemination of ideas."

In addition, Plaintiff challenges the constitutionality of East Greenwich's door-to-door solicitation permit requirements including its fee requirements. First Amendment law provides that requiring a person to give advance notice to the police before discussing important issues of the day is "offensive—not only to the values protected by the First Amendment, but to the very notion of a free society..." and is incompatible with our "national heritage and constitutional tradition." *Watchtower Bible v. Village of Stratton, 536 U.S. 150, 165-66 (2002).* Plaintiff here, as in the *Watchtower* case, challenges the ordinances on facial and overbreadth grounds. Our U.S. Supreme Court in *Watchtower* reaffirmed its long-standing commitment to giving the highest First Amendment protection to door-to-door canvassing. *Id.* at 161-64. Door-to-door solicitation is "perhaps the most effective way of bringing [pamphlets and information] to the notice of individuals." *Id.* at 162 *quoting Schneider v. State*, 308 U.S. 147, 164 (1939). The U.S. Supreme Court in *Watchtower* recognized that "door to door distribution of circulars is essential to the poorly financed causes of little people." *Id.* at 163, *quoting Martin v. Struthers* 319 U.S. 141, 144-46 (1943).

The application of the Court's ruling as applied to a non-profit organization such as ACORN conducting door-to-door solicitation for the benefit of advancing the interest of low and moderate income people is inescapable.

The annotations on the ordinance indicating "per Ed Alves Jehovah's Witness don't need one [permit]" appears to be an acknowledgement on East Greenwich's part that the permit requirement in question is unconstitutional. See Exhibit A to Plaintiff's complaint.[1] The fact that East Greenwich would apply this same provision to similarly situated organizations raises equal protection concerns.

In accordance with accepted law, Plaintiff will demonstrate that the temporary restraining order should issue because it has a likelihood of success on the merits, the Plaintiff will be irreparably harmed if the injunction is not granted, the injury to Plaintiff outweighs any harm which granting the injunctive relief would impose on the Defendants, and, lastly, the public interest will not be adversely affected by granting the injunction.

A. LIKELIHOOD OF SUCCESS ON THE MERITS

Numerous courts have ruled unconstitutional municipal ordinances limiting door-to-door canvassing and solicitation before 9:00 p.m, and the U.S. Supreme Court has summarily affirmed one of those rulings. *See City of Watseka v. Illinois Public Action Council*, 796 F.2d 1547 (7th Cir. 1986), *aff'd* 479 U.S. 1048 (1987)(ruling unconstitutional an ordinance which prohibited a non-profit organization from engaging in door-to-door soliciting between the hours of 5:00 p.m. to 9:00 p.m. Monday through Saturday). *See also Wisconsin Action*

[1] On information and belief Ed Alves was the Town Solicitor on the date of the annotation (12/28/2002).

*Coalition v. City of Kenosha*, 767 F.2d 1248 (7th Cir. 1985)(striking down ordinance barring solicitation between 8:00 pm and 9:00 p.m.); *ACORN v. City of Dearborn*, 696 F.Supp. 268 (E.D.Mich. 1988)(striking down ordinance prohibiting canvassing or soliciting after 7:00 p.m.); *New Jersey Citizen Action v. Edison Township*, 797 F.2d 1250 (3rd Cir. 1986)(striking down various ordinances restricting solicitation during evening hours); *ACORN v. City of Frontenac*, 714 F.2d 813 (8th Cir. 1983)(striking down ordinance banning charitable canvassing between 6:00 p.m. and 9:00 p.m.)

The Town's rationale here cannot be narrowly tailored to meet a substantial governmental interest. Other cases have similarly rejected several purported rationales in support of limiting the time for solicitation. *See Watseka*, 796 F.2d at 1556 (7th Cir. 1986) (rejecting rationales of crime prevention (at 1555); fraud and embezzlement (at 1556); and protecting the quiet enjoyment and peace of its residents (at 1556)). With respect to the quiet enjoyment and peace of its residents, the *Watseka* court rejected the ban noting:

> To support the restrictions on this ground [of annoyance] is to derogate the First Amendment rights of plaintiffs and those of defendants' residents who would be willing recipients of plaintiffs' message during the evening hours to the nuisance concerns of those of their residents who would not be willing listeners during those hours, when the wishes of both groups can be easily accommodated.

*Id.* (quoting *Citizens for a Better Environment v. Village of Olympia Fields*, 511 F.Supp. 104, 107 (N.D. Ill. 1980).

Thus, in accordance with well-established federal case law, ACORN has a great likelihood of success on the merits of its complaint against the

Defendants for abridging its First Amendment rights with respect to the time limitation in East Greenwich's door-to-door solicitation ordinances.

ACORN has a likelihood of success on the permit aspects of the East Greenwich door-to-door ordinances as well. In *Watchtower*, the U.S. Suprme Court stated:

> It is offensive—not only to the values protected by the First Amendment, but to the very notion of a free society—that in the context of everyday public discourse a citizen must first inform the government of her desire to speak to her neighbors and then obtain a permit to do so. Even if the issuance of permits by the mayor's office is a ministerial task that is performed promptly and at no cost to the applicant, a law requiring a permit to engage in such speech constitutes a dramatic departure from our national heritage and constitutional tradition.

*Watchtower*, at 165-66.

Here, East Greenwich's ordinance is even more onerous that the one in *Watchtower*. The permit impermissibly requires a minimum of five days notice; the police issue the permits so that criminal background tests can be conducted and is therefore not merely a ministerial task; and there is a cost to the applicant.[2] Thus, in all regards, ACORN has a strong likelihood of success of the merits of its complaint.

The fact that ACORN also solicits donations for its charitable purposes does not change the analysis. Although *Watchtower* is ambiguous on this point, a fair reading of the case supports an interpretation that door-to-door solicitation ordinances that require payment and registration to conduct non-profit activities that

[2] It is unclear whether the cost to ACORN would be the $10 per person cited by Defendant Desjarlais or the $5

include the solicitation of charitable donations are unconstitutional. Two federal district courts have concurred with this analysis. *See infra.*

While the Court in *Watchtower* acknowledged that prior cases have recognized that a town may have a greater interest in regulation "when the solicitation of money is involved," the Court appears to have been referring to purely commercial speech. *Id.* at 162 *citing Cantwell v. Connecticut*, 310 U.S. 296 (1940). This type of analysis is also consistent with prior Supreme Court cases. For example, in *Village of Schaumburg v. Citizens for a Better Environment*, 536 U.S. 620, 622-24 (1980) the U.S. Supreme Court reviewed a case challenging an ordinance that restricted door-to-door solicitation by groups whose fund-raising and administrative expenses exceeded 25% of the budget. The Court in *Schaumburg* concluded that a request for financial support by charitable organizations does not transform otherwise political speech into commercial speech. Moreover, the Court recognized such type of solicitation as essential to these organizations' continuing vitality. *Id.* at 628-32.

More importantly, the Court rejected the municipality's argument that the permit-requirement was constitutional because it was limited to groups soliciting money. *Id.* at 628.

Similarly, in *Secretary of State of Maryland v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 959-60 (1984) the Court struck down a restriction on charitable organizations using professional fundraisers, reaffirming *Schaumburg's* holding that seeking financial support does not diminish the constitutional protection afforded

---

per day/$100 per year in Sec. 93-1 of East Greenwich's ordinance.

charitable solicitations pursuant to the First Amendment.

Likewise in 1988, the U.S. Supreme Court in *Riley v. Nat'l Fed. of the Blind of North Carolina, Inc.*, 487 U.S. 781, 796 (1988) reiterated as previously found in *Schaumburg* and *Munson* that the fund-raising portion of a message delivered by charitable, political and religious groups was "inextricably intertwined" with informative speech. Moreover the Court in *Riley* stressed that it is improper to apply different constitutional standards to component messages:

> Where, as here, the component parts of a single speech are inextricably intertwined, we cannot parcel out the speech, applying one test to one phrase and another test to another phrase. Such an endeavor would be both artificial and impractical. Therefore, we apply our test for fully protected expression.

*Id.*

Therefore, it is undeniable that the canvassing activities such as the ones sought to be conducted by ACORN in East Greenwich enjoy maximal constitutional First Amendment protection, regardless whether it accompanies a request for a monetary donation. This argument is bolstered by the fact that two federal courts have rejected arguments that *Watchtower* permits licensing systems for charitable solicitors who include a financial appeal in their solicitation.

In 2003, the Northern District of Ohio in *Ohio Citizen Action v. City of Mentor-on-the-Lake*, 272 F.Supp.2d 671, 680 (N.D. Ohio 2003) relying on the trilogy of cases discussed above, held that "financial appeals by a charitable organization are inextricably intertwined with fully protected speech that the organization

espouses." "When a charitable or other non-profit organization incorporates a request for donations or other fund-raising activities with their otherwise fully protected speech, the courts may not parcel out the financial or 'commercial' aspect of the speech in order to justify the application of a lower level of scrutiny." *Id. quoting Riley*, 487 U.S. at 796. In holding unconstitutional the permit requirement when applied to charitable solicitors who incorporate a request for money, the court in *OCA* concluded that *Watchtower* "must apply equally to charitable organizations who incorporate the solicitation of funds for their cause during such campaigns, and to those who do not." *Id.* The Court held "that the licensing provisions in the Ordinance, including the licensing requirement, the fingerprinting and background check, and all associated fees [ ] are unconstitutional prior restraints." *Id.* at 681.

The second federal court that examined this issue was the District of New Jersey in *New Jersey Environmental Federation v. Wayne Township*, 310 F.Supp.2d 681 (D.N.J. 2004). The court in *NJEF* also held that charitable donation requests were inextricable from the information-dissemination process and thus are not construed the way "purely commercial speech" is. *Id.* at 690-91, 692-93. Applying intermediate scrutiny to the ordinance in *NJEF*, the court held the permit requirement unconstitutional. *Id.* at 694 n.9. Moreover, the *NJEF* court also concluded that treating solicitors differently based upon whether they seek charitable donations is a "content-based" distinction that triggers strict scrutiny. *Id.* at 694.

Since the Each Greenwich ordinance as applied to ACORN requires a permit for charitable and non-commercial solicitations, the ordinance is overbroad under *Watchtower.*

ACORN also has a likelihood of success on the merits of its claim that East Greenwich's door-to-door- solicitation ordinance is unconstitutional because of its five day wait requirement. The Supreme Court in *Watchtower* emphatically denounced any waiting period for obtaining a permit prior to engaging in First Amendment protected activity.

> There is a significant amount of spontaneous speech that is effectively banned by the ordinance. A person who made a decision on a holiday or a weekend to take an active part in a political campaign could not begin to pass out handbills until after he or she obtained the required permit. Even a spontaneous decision to go across the street and urge a neighbor to vote against the may or could not lawfully be implemented without first obtaining the mayor's permission.

*Watchtower,* 536 U.S. at 167-68.

This was just one of the reasons the Court in *Watchtower* struck down the door-to-door registration requirement. Here, the same result is likely.

In addition, as indicated above, the fact that East Greenwich exempts the Jehovah's Witnesses from the permit requirements further demonstrates the likely unconstitutionality of the ordinances and thus the likelihood of success on the merits of ACORN's complaint.

B. IRREPARABLE HARM

As indicated in Plaintiff's verified complaint, canvassing is a vital part of

ACORN's program. Specifically, ACORN has found that door-to-door canvassing is an effective way of disseminating information about its activities to a large segment of the population. *See Verified Complaint paragraph 10.* Moreover, ACORN's prior canvassing activities demonstrate that canvassing continues to be effective after 7:00 p.m. (the deadline imposed by the ordinance). *See Verified Complaint paragraphs17 and 18.*

In light of the effectiveness of canvassing after 7:00 p.m., the Plaintiff is irreparably harmed each evening its canvassing activities are so limited. The Supreme Court and this circuit have found that "[t]he loss of First Amendment Freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). *See also In the Matter of Providence Journal Co.*, 820 F .2d 1342, 1352 (1st Cir. 1986) ("even a temporary restraint on expression may constitute irreparable injury"); *Cirelli v. Town of Johnson School Dist.*, 888 F. Supp.13, 16 (D.R.I. 1995) (irreparable harm established when plaintiff "demonstrat[es] that her First Amendment rights have very likely been violated.")

The same is true with respect to the permit requirements.

Therefore, Plaintiff has demonstrated irreparable harm in this case.

C. EQUITIES FAVOR THE PLAINTIFF

In analyzing the third factor considered for granting a temporary restraining order, it is clear that the equities favor the Plaintiff. While the Plaintiff will suffer irreparable harm if the injunction is not granted, the Town will suffer no harm if the injunction is granted.

D. PUBLIC INTEREST

There is no evidence that can be offered to demonstrate that the public interest will be adversely affected if the injunctive relief requested is granted. If individual members of the public do not wish to be solicited by ACORN (or any other canvassing group) there are methods to prohibit such solicitations. The decision as to whether to receive a canvasser or solicitor is an individual one. The action of the Town should not substitute "the judgment of the community for the judgment of the individual householder." *Martin v. Struthers*, 319 U.S. 141, 144 (1943).

The U.S. Supreme Court reiterated "the historical importance of door-to-door canvassing and pamphleteering as vehicles for the dissemination of ideas." *Watchtower Bible v. Village of Stratton*, 536 U.S. 150, 162. It is certainly in the public interest to protect this long-standing form of expression from unreasonable restriction.

Accordingly, the requested temporary restraining order would not harm the public interest. In fact, the public interest would benefit from the free flow of ideas afforded if the temporary restraining order issues.

CONCLUSION

Because ACORN has a likelihood of success on the merits, will suffer irreparable harm if the restraining order is not granted, its injury outweighs any harm which granting injunctive relief would impose on the Defendants, and the public interest will not be adversely affected, this Court should issue a temporary restraining order against the Defendants, their attorneys, officers, servants, employees and agents, and all persons acting in concert with them from a)

requiring plaintiff to obtain and pay for a permit to conduct political canvassing for each of its canvassers; b) denying Plaintiff the right to canvass until 9:00 p.m. and/or c) arresting, harassing or commencing criminal, civil, or administrative proceedings against the Plaintiff, its canvassers, or any persons acting in concert with them based upon their conducting peaceful canvassing activities in the Town of East Greenwich before 9:00 p.m.

Plaintiff
By its Attorney:

CAROLYN A. MANNIS, ESQ. #4275
As volunteer attorney for the R.I. Affiliate of the
American Civil Liberties Union
170 Westminster Street, Suite 800
Providence, RI 02903
401.454.4466 (Telephone)
401.351.3914 (Facsimile)