UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

Association of Community Organizations for Reform Now,
Plaintiff,

v.

TOWN OF EAST GREENWICH by and through its Town Council Members, Michael B. Isaacs, John M. McGurk, Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti, in their official capacities, its CHIEF OF POLICE, David Desjarlais in his official capacity and its FINANCE DIRECTOR, Thomas Mattos in his official capacity,
Defendants.

C.A. NO. 06-208 T

**DEFENDANT TOWN OF EAST GREENWICH'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Now comes the Town of East Greenwich, and hereby Opposes Plaintiff's Motion for a Preliminary Injunction.[1] As grounds for this Opposition, the Defendant states as follows:

1. The Plaintiffs have No Likelihood of Success on the Merits because the East Greenwich ordinance is narrowly tailored to meet the legitimate interests of preventing fraud, crime and protecting privacy.
2. The Plaintiffs have Suffered no Irreparable Harm.
3. The Balance of the Equities Weighs in Favor of the Town.
4. The Public Interest Mandates Denial of the Preliminary Injunction.

In further support of this Opposition, the Defendant incorporates by reference the accompanying

---

[1] Although styled as "Plaintiffs Motion for a Temporary Restraining Order," the Court, Lagueux, J., denied the Motion and set the matter for a preliminary injunction hearing.

Memorandum of Law. The Defendant further expects to support this opposition through the presentation of evidence and testimony at the Hearing upon the Motion.

For the foregoing reasons, the Town of East Greenwich respectfully requests this Honorable Court to deny Plaintiff's Motion for Preliminary Injunctive Relief.

The Defendant,
TOWN OF EAST GREENWICH, by and through its Town Council Members, Michael B. Isaacs, John M. McGurk, Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti, in their official capacities, its CHIEF OF POLICE, David Desjarlais in his official capacity and its FINANCE DIRECTOR, Thomas Mattos in his official capacity,
By its attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

John J. Cloherty, # 5068
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Providence Office:
128 Dorrance St., Suite 400
Providence RI 02903

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by mail- FAX (by hand) on 5/22/06.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| Association of Community Organizations for Reform Now,<br>Plaintiff,<br><br>v.<br><br>TOWN OF EAST GREENWICH by and through its Town Council Members, Michael B. Isaacs, John M. McGurk, Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti, in their official capacities, its CHIEF OF POLICE, David Desjarlais in his official capacity and its FINANCE DIRECTOR, Thomas Mattos in his official capacity,<br>Defendants. | ) | C.A. NO. 06-208 T |

**DEFENDANT TOWN OF EAST GREENWICH'S OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

## I. FACTS

### A. The East Greenwich Ordinance

Chapter 174 of the Code of East Greenwich regulates Peddling and Soliciting.[1] This ordinance is directly authorized by the State of Rhode Island General Laws. See R.I. Gen. L. § 5-11-18(b)(2).[2] Section 2 of the East Greenwich ordinance, which requires a permit for "charitable

[1] The Plaintiff's complaint cites to obsolete sections of the East Greenwich Code, which were reorganized and renumbered for the 2005 Code. Upon information and belief there were no substantive changes to the Ordinance concerning Peddling and Soliciting when the Code was re-organized.

[2] The State law expressly authorizes East Greenwich "to provide, by ordinance, for the discretionary issuance and revocation of licences to hawkers and peddlers, pursuant to the provisions of this section on a daily or weekly basis, to establish reasonable fees for the issuance or revocation, and to promulgate, by ordinance, reasonable rules and regulations as to the placement, duration, location, number, and operation of those licences within the town." See R.I. Gen. L. § 5-11-18(b)(2).

solicitation," provides that "No person shall solicit contributions for any charitable or religious purpose within the Town without having received a hawker's, peddler's and solicitor's permit pursuant to the terms of this chapter. ..."[3] See East Greenwich Code § 174-2. The Ordinance defines a number of terms, including "SOLICIT and SOLICITATION" which is "[t]he request, either directly or indirectly, for money, credit, property, financial assistance or other thing of value, any plea or representation that such money, credit, property, financial assistance or other thing of value will be used for charitable or religious or commercial purposes. ..." See East Greenwich Code § 174-1. Notably, once the applicant has submitted an application, the Ordinance mandates that the Police Chief issue the permit. See East Greenwich Code § 174-5 (stating "Upon compliance with the provisions of § 174-5B, the Police Chief shall issue a hawker's, peddler's and solicitor's permit to the applicant for the period requested, provided that the period shall not exceed one year from the date of issuance). The time limitation for soliciting is succinctly set forth in the Ordinance: "No person shall engage in door-to-door solicitations before the hour of 9:00 a.m. nor after the hour of 7:00 p.m." See East Greenwich Code § 174-12.

**B. Plaintiffs Failure to Apply for Permit**

Upon information and belief, the Plaintiff failed to ever apply for a permit from the Town of East Greenwich. The Town made no formal determination of whether a permit was required

---

[3] The Ordinance exempts solicitations of members of an organization by other members. See East Greenwich Code § 174-2 (stating "the provisions of this chapter shall not apply to any person organized and operated exclusively for religious or charitable purposes and not operated for the pecuniary profit of any such person, if the solicitations by such established person are conducted among the members thereof by other members or officers thereof voluntarily and without remuneration for making such solicitations, or if the solicitations are in form of collections or contributions at the regular assembly or services of any such person; provided further, however, that no person shall be deemed to be a member if such person is a member solely by reason of having made a contribution thereto.")

under the Ordinances. The evidence at the Preliminary Injunction Hearing is anticipated to show that all that transpired was telephone inquiries from a representation of ACORN who was advised by the Town of the existence of the Ordinance regulating Peddling and Soliciting. The next notice of any kind was of the filing of this lawsuit.

## II. STANDARD OF REVIEW

Rule 65 governs the issuance of preliminary injunctions and temporary restraining orders. See Fed. R. Civ. P. 65. In the First Circuit, courts employ the familiar four-part test for determining whether to grant requests for preliminary injunctive relief, "taking into account:

1. The likelihood of success on the merits;

2. The potential for irreparable injury;

3. A balancing of the relevant equities (most importantly, the hardship to the nonmovant if the restrainer issues as contrasted with the hardship to the movant if interim relief is withheld); and

4. The effect on the public interest of a grant or denial of the restrainer."

Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 5 (1st Cir. 1991) (citing Aoude v. Mobil Oil Corp., 862 F.2d 890, 892 (1st Cir. 1988); Hypertherm, Inc. v. Precision Products, Inc., 832 F.2d 697, 699 & n. 2 (1st Cir. 1987)). The First Circuit has long adhered to the so-called "watertight compartments" view of preliminary injunction criteria, holding that "[n]one of these criteria should be slighted." LeBeau v. Spirito, 703 F.2d 639, 642 (1st Cir. 1983); see also Coalition for Basic Human Needs v. King, 654 F.2d 838, 841 (1st Cir.1981) (stating even where irreparable injury is "excruciatingly obvious," plaintiffs must show probability of prevailing on claims to obtain preliminary injunction). The party seeking the preliminary injunction bears the burden of

establishing that these four factors weigh in its favor. Nieves-Márquez v. Puerto Rico, 353 F.3d 108, 120 (1st Cir.2003).

## III. ARGUMENT

### A. No Likelihood of Success on the Merits

The First Circuit has spoken concerning each of the four prongs of proof for a party seeking preliminary injunctive relief. "The sine qua non of this four-part inquiry is likelihood of success on the merits: if the moving party cannot demonstrate that he is likely to succeed in his quest, the remaining factors become matters of idle curiosity." New Comm Wireless Servs., Inc. v. SprintCom, Inc., 287 F.3d 1, 9 (1st Cir.2002). This element must be clearly established: "[l]ikelihood of success cannot be woven from the gossamer threads of speculation and surmise." Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 (1st Cir. 1991).

Plaintiff relies extensively upon the U.S. Supreme Court decision of Watchtower Bible and Tract Soc'y v. Village of Stratton, 536 U.S. 150 (2002).[4] Although Watchtower Bible invalidated the Village ordinance at issue, that ordinance was quite different from the one now in place in East Greenwich. Furthermore the Watchtower Bible Court actually reiterated the principles supporting the East Greenwich Ordinance:

Despite the emphasis on the important role that door-to-door canvassing and pamphleteering

---

[4] The majority in Watchtower Bible extolled the alleged historical importance of door-to-door canvassing, however, the dissent correctly points to precedent that "'Of all the methods of spreading unpopular ideas, [house-to-house canvassing] seems the least entitled to extensive protection. The possibilities of persuasion are slight compared with the certainties of annoyance. Great as is the value of exposing citizens to novel views, home is one place where a man ought to be able to shut himself up in his own ideas if he desires.'" See Watchtower Bible, supra 536 U.S. at 176 (Rehnquist, C.J., dissenting) (citing Hynes v. Mayor and Council of Oradell, 425 U.S. 610, 619 (1976)).

> has played in our constitutional tradition of free and open discussion, these early cases also recognized the interests a town may have in some form of regulation, particularly when the solicitation of money is involved. In Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940), the Court held that an ordinance requiring Jehovah's Witnesses to obtain a license before soliciting door to door was invalid because the issuance of the license depended on the exercise of discretion by a city official. Our opinion recognized that "a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent." Id., at 306, 60 S.Ct. 900. Similarly, in Martin v. City of Struthers, the Court recognized crime prevention as a legitimate interest served by these ordinances and noted that "burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later." 319 U.S., at 144, 63 S.Ct. 862.

Watchtower Bible, supra 536 U.S. at 162-163. Of course, when recognizing the Town's rights to regulate solicitation, the Watchtower Bible Court cautioned that "there must be a balance between these interests and the effect of the regulations on First Amendment rights." Id. The Watchtower Bible Court mentioned the legitimacy of the municipality's "three interests are served by its ordinance: the prevention of fraud, the prevention of crime, and the protection of residents' privacy" stating the Court had "no difficulty concluding, in light of our precedent, that these are important interests that the Village may seek to safeguard through some form of regulation of solicitation

activity."[5] Id. at 164-165. It was only due to the "the breadth of speech affected by the ordinance and the nature of the regulation" that the Court invalidated the Village of Stratton's ordinance after balancing the interests.[6] Id. at 164. In contrast, in the present case, the East Greenwich ordinance is much more narrowly tailored to meet the legitimate interests of preventing fraud, crime and protecting privacy.

Distinguishing the East Greenwich ordinance from that in Watchtower Bible, this court need only look to the fact that the Village of Stratton ordinance "prohibits 'canvassers' from going on private property for the purpose of explaining or promoting any 'cause,' unless they receive a permit and the residents visited have not opted for a 'no solicitation' sign." Watchtower Bible, supra 536 U.S. at 165 (emphasis added). In contrast, the East Greenwich Ordinance does not even apply to persons seeking to "explain or promote any cause," and instead only governs those "soliciting" funds as defined in the ordinance, and even then mandates granting of the permit so long as an application is completed. See East Greenwich Code § 174-1; 174-2. Remarkably, the Watchtower Bible Court

---

[5] Indeed, the dissent in Watchtower Bible highlighted these legitimate concerns, stating "[m]ore than half a century ago we recognized that canvassers, 'whether selling pots or distributing leaflets, may lessen the peaceful enjoyment of a home,' and that 'burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later.'" Watchtower Bible, supra 536 U.S. at 172 (Rehnquist, C.J., dissenting) (citing Martin v. City of Struthers, 319 U.S. 141, 144 (1943). The dissent went on to describe the double murders of the Zantops in Dartmouth N.H. by two teens posing as conducting a survey as the type of crime that may have been prevented by the disputed ordinance. See Id.

[6] The primary defect with the Watchtower Bible ordinance was the sheer amount of speech subject to government restriction. In fact, because of its broad wording, the Watchtower ordinance would have required prior government permitting not only for religious canvassers like the Jehovah's Witnesses, but also for groups such as "Camp Fire Girls," "Children's Sports Organizations," "Christmas Carolers," "Parcel Delivery," "Little League," "Trick or Treaters during Halloween Season," "Political Candidates," and "Campaigners" (among other groups), unless expressly exempted by the target home-owner. Watchtower Bible, supra 536 U.S. at 157 n. 6.

opined "[h]ad this provision been construed to apply only to commercial activities and the solicitation of funds, arguably the ordinance would have been tailored to the Village's interest in protecting the privacy of its residents and preventing fraud." See Watchtower Bible, supra 536 U.S. at 165 (emphasis added). The East Greenwich ordinance expressly applies only to "the solicitation of funds" and therefore is properly tailored to conform to the First Amendment.[7]

Notable in Watchtower Bible is the absence of any statement of what level of scrutiny applies to an ordinance implicating the First Amendment. Shortly before deciding Watch Tower, the Supreme Court reaffirmed that the so-called "intermediate scrutiny" test applies to content-neutral time, place, or manner restrictions on speech in public forums. See Thomas v. Chicago Park Dist., 534 U.S. 316 (2002). There should be no dispute that the East Greenwich ordinance is content neutral, applying to all soliciting regardless of content. Under this "intermediate scrutiny" standard, the government may impose reasonable, content-neutral, restrictions on the time, place, or manner of protected speech, provided the restrictions "are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989) (quoting Clark v. Community for Creative Non-Violence, 468 U.S. 288, 293 (1984)). The East Greenwich ordinances meet this intermediate scrutiny, and there are ample opportunities for Plaintiff to communicate with

[7] Arguably, had the Jehovah's Witness plaintiffs in Watchtower Bible sought to proselytize in East Greenwich that would not have required a permit because they do not seek to solicit money when going door-to-door. See, e.g. Watchtower Bible and Tract of NY v. Sanchez Ramos, 389 F.Supp.2d 171, 175 (D.P.R. 2005) (stating "As part of their ministry, Jehovah's Witnesses ... offer home Bible studies without cost to anyone who is interested and offer religious literature without cost to anyone who shows genuine interest in reading it. All preaching and teaching by Jehovah's Witnesses is done voluntarily and without charge. The basis for their doing this work is the Scriptural commission that "without cost I gladly declared the good news of God to you" as stated in the Bible by the apostle Paul at 2 Corinthians 11:7.")

citizens such as telephone, street corners, internet or radio and television.

In the aftermath of the Watchtower Bible decision, other courts have upheld municipal ordinances that limited door-to-door canvassing despite constitutional challenges under the First Amendment. In another Jehovah's Witness case, the District of Puerto Rico found that the "Controlled Access Law" which authorized municipalities to grant permits to control both motor vehicle and pedestrian traffic through a single access or exit point, designed to respond to a soaring murder rate, did not violate the Plaintiff's First Amendment rights. See Watchtower Bible and Tract of NY v. Sanchez Ramos, 389 F.Supp.2d 171, 184 (D.P.R. 2005) (reasoning that by "restricting all visitors' access to purely residential communities that do not constitute a thoroughfare or route of communication to another destination, the Controlled Access law is intended to help ... in preventing crime by keeping track of who enters the community ... [thus the] laws are narrowly tailored to serve a significant government interest in crime prevention while leaving open alternative channels of speech"). The Sixth Circuit has upheld a City ordinance prohibiting individuals from placing leaflets on vehicles without the consent of the vehicle owners because the ordinance was a reasonable time-place-and-manner regulation of speech. See Jobe v. City of Catlettsburg, 409 F.3d 261 (6th Cir. 2005) (finding content neutral ordinance advanced two significant government interests, including preventing littering and preventing the use of private property for purposes neither intended nor welcomed by the owner). The Fifth Circuit has upheld the bulk of a City agency's regulations restricting hours of door-to-door solicitation at government-owned low-income housing complex as reasonable time, place and manner restrictions comporting with First Amendment; . See de la O v. Housing Authority of City of El Paso, 417 F.3d 495 (5th Cir. 2005). In de la O, the regulations prohibited leaving flyers on doors if no one answered, but explicitly allowed any person to enter

complex to engage in political campaigning or religious proselytizing as long as advance notice was provided to complex's management, and limited the solicitation and flyer distribution to between 9:00 a.m. and 8:00 p.m. Id. at 498. These and other decisions demonstrate that the Town of East Greenwich was within its rights to regulate the door-to-door solicitation with narrowly tailored ordinances to serve the important governmental interests of preventing fraud, preventing crime, and protecting residents' privacy.

Neither the time restrictions nor the requirement of a permit alter the Constitutionality of the ordinances. Other courts have rejected First Amendment claims and upheld similar time restrictions as the 9:00 a.m. to 7:00 p.m. limits in East Greenwich. See, e.g. de la O v. Housing Authority of City of El Paso, 417 F.3d 495 (5th Cir. 2005) (upholding limitation of 9:00 a.m. to 8:00 p.m.); Pennsylvania Alliance for Jobs and Energy v. Council of Borough of Munhall, 743 F.2d 182, 189 (3rd Cir. 1984) (upholding limitations on solicitation in one Town from 9 a.m. to 5 p.m. in winter which are extended to last from 9 a.m. to 9 p.m. in summer, and another Town with limitations year-round between the hours are 9 a.m. to 6 p.m.); Westfall v. Board of Commissioners, 477 F.Supp. 862, 865 (N.D.Ga. 1979) (upholding ordinance which prohibited soliciting and canvassing of private residences except between the hours of 9:00 a.m. and 6:00 p.m.); see also Borough of Collingswood v. Ringgold, 66 N.J. 350, 356, 331 A.2d 262, 266 (1975) (rejecting constitutional challenge to conviction of violating canvassing ordinance limiting canvassing to between the hours of 9:00 A.M. and 5:00 P.M. Monday through Saturdays). Nonetheless, the U.S. Supreme Court acknowledges that where the "solicitation of funds" occurs during the door to door canvassing, a municipality has "important interests ... to safeguard through some form of regulation of solicitation activity. Watchtower Bible, supra, 536 U.S. 165. Here the town of East Greenwich regulations requiring a

permit and limiting the hours of solicitation to between 9 a.m. and 7 p.m. are reasonably tailored to meet those "important interests." The Plaintiffs here do not have a likelihood of success on the merits.

### B. No Irreparable Harm

The First Circuit has stated, "irreparable harm is not assumed; it must be demonstrated." Narragansett Indian Tribe v. Guilbert, 934 F.2d 4, 6 -7 (1st Cir. 1991). "Speculative injury does not constitute a showing of irreparable harm." Public Service Co. v. West Newbury, 835 F.2d 380, 383 (1st Cir.1987). Most anything that can be redressed by payment of money is not irreparable.[8] K-Mart Corp. v. Oriental Plaza, Inc., 875 F.2d 907, 914 (1st Cir. 1989). See also Weinberger v. Romero-Barrcelo, 456 U.S. 305, 312 (1982) ("An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable'"); The Foxboro Co. v. Arabian Am. Oil Co., 805 F.2d 34, 36 (1st Cir. 1986) ("We do not find irreparable injury where only money is at stake and where the plaintiff has a satisfactory remedy at law to recover the money at issue."); Itek Corp. v. First Nat'l Bank, 703 F.2d 19, 22 (1st Cir. 1984).

In the present case, all Plaintiff points to for irreparable harm is the speculative claim that it may receive call backs from citizens to return between the hours of 7 p.m. and 9 p.m., and those hours in other communities have been effective. This two hour window in the evening is a small time in comparison to 10 hours a day that soliciting is permitted. Furthermore, there is no restriction

[8] There is some authority for the proposition that "monetary loss may constitute irreparable harm where the loss threatens the very existence of the movant's business." Hull Mun. Lighting Plant v. Massachusetts Mun. Wholesale Elec. Co., 399 Mass. 640, 643, 506 N.E.2d 141-42 (1987) (citing Wisconsin Gas Co. v. FERC, 758 F.2d 669, 674 (D.C. Cir. 1985)).

on weekend soliciting, when presumably the majority of residents would be home the entire 10 hours allotted under the ordinance. See, e.g. Westfall, supra 477 F.Supp. at 865 (finding that the plaintiffs were allowed to solicit during the weekend, and that public solicitation of those away from their homes on weekdays was available to the plaintiffs). Significantly, there is no evidence anticipated as to the amount of successful solicitations obtained during the time permitted under the ordinance because Plaintiff has never sought nor obtained a permit under the ordinance. There is expected to be no evidence that soliciting during the permitted hours in the Town of East Greenwich would be ineffective. Certainly it is equally likely that Plaintiff may find the most effective hours for soliciting in East Greenwich are between the hours of 10:00 to 11:00 in the morning or 3:00 to 5:00 in the afternoon. Suggestions otherwise are pure speculation due to Plaintiff making no effort to conduct its canvassing within the terms of the ordinance prior to seeking relief in federal court.

### C. The Balancing of Equities Favors the Town

It is well settled that a governmental regulation may proscribe particular conduct in order to protect a governmental interest unrelated to the suppression of free expression. United States v. O'Brien, 391 U.S. 367, 377 (1968). "[T]he [Supreme] Court has consistently recognized a municipality's power to protect its citizens from crime and undue annoyance by regulating soliciting and canvassing. A narrowly drawn ordinance, that does not vest in municipal officials the undefined power to determine what messages residents will hear, may serve these important interests without running afoul of the First Amendment." Hynes v. Mayor and Council of Oradell, 425 U.S. 610, 616-617 (1976)(rejecting First Amendment claim but striking down a registration ordinance on vagueness grounds). The interests of the Town of East Greenwich, as approved in Watchtower Bible are threefold: of preventing fraud, preventing crime, and protecting residents' privacy.

The interest in preventing fraud in plainly manifest in the ordinance. It applies to those persons seeking to solicit funds at a resident's door. Long ago, the Supreme Court recognized that "a State may protect its citizens from fraudulent solicitation by requiring a stranger in the community, before permitting him publicly to solicit funds for any purpose, to establish his identity and his authority to act for the cause which he purports to represent." Cantwell v. Connecticut, 310 U.S. 296, 306(1940). Indeed, the permit requirement arguably inures to the benefit of any solicitors, because the residents will have the confidence to contribute to the organization based upon the Town having confirmed the solicitor's authority to act for the cause he purports to represent.

Concerning protecting citizens from crime, the U.S. Supreme Court has held that "burglars frequently pose as canvassers, either in order that they may have a pretense to discover whether a house is empty and hence ripe for burglary, or for the purpose of spying out the premises in order that they may return later." Martin v. City of Struthers, 319 U.S. 141, 144 (1943). The Town of East Greenwich is entitled to rely on the Supreme Court's assertion in Martin that door-to-door canvassing poses a risk of crime, even if there is no demonstrable crime occurring in the Town by canvassers. See Erie v. Pap's A.M., 529 U.S. 277, 297 (2000) (stating City of Erie when contesting First Amendment challenge to indecency ordinance could reasonably rely on the evidentiary foundation set forth in Supreme Court decisions concerning the secondary effects caused by the presence of an adult entertainment establishment in a given neighborhood). The Town of East Greenwich may also rely upon the experience of other jurisdictions with crime stemming from door-to-door canvassing. See Renton v. Playtime Theatres, Inc., 475 U.S. 41, 51-52 (1986) ("The First Amendment does not require a city, before enacting ··· an ordinance, to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever

evidence the city relies upon is reasonably believed to be relevant to the problem that the city addresses"). As articulated by the dissent in Watchtower Bible, "The Constitution does not require that [a municipality] first endure its own crime wave before it takes measures to prevent crime." See Watchtower Bible, supra 536 U.S. at 177 (Rehnquist, C.J., dissenting).

It is also well-settled that canvassing "may lessen the peaceful enjoyment of a home." Martin v. City of Struthers, 319 U.S. 141, 144 (1943). Door-to-door canvassing takes place in private homes. The privacy of the home, and the obligation of government to protect that privacy, are entitled to particular solicitude from the courts. See, e.g., Carey v. Brown, 447 U.S. 455, 471 (1980); F.C.C. v. Pacifica Foundation, 438 U.S. 726, 748 (1978); Breard v. City of Alexandria, 341 U.S. 622, 644 (1951). Indeed, the Supreme Court has noted that, because of the countervailing privacy interests of householders, "[o]f all the methods of spreading unpopular ideas, house to house canvassing seems the least entitled to extensive protection." Hynes v. Mayor of Oradell, 425 U.S. 610, 619 (1976). Door-to-door canvassing of private homes is plainly not a public forum such that time, place, and manner regulations of it must satisfy the "least restrictive alternative" standard. Pennsylvania Alliance for Jobs and Energy v. Council of Borough of Munhall, 743 F.2d 182, 186 (3rd Cir. 1984).

These interest of the Town, protecting its residents against fraud, against crime, and from disruptions in the privacy of their home, outweigh the interests of Plaintiff in canvassing for an additional two hours at night, and of having to register and obtain a permit prior to commencing their solicitations.

**D. The Public Interest Warrants Denial of Preliminary Injunctive Relief**

Because the Defendant is a governmental entity, the interests of the Defendant articulated

above are tantamount to the public interest. The relatively minor burden of having to register to obtain a permit, and brief limitations of two hours in the evening when soliciting door-to-door, are consist with the public interest in preventing fraud, crime, and preserving the privacy of ones home.

## IV. CONCLUSION

For the foregoing reasons, the Town of East Greenwich respectfully requests this Honorable Court to deny Plaintiff's Motion for Preliminary Injunctive Relief.

The Defendant,
TOWN OF EAST GREENWICH, by and through its Town Council Members, Michael B. Isaacs, John M. McGurk, Mathias C. Wilkinson, Henry V. Boezi and Kelly A. Petti, in their official capacities, its CHIEF OF POLICE, David Desjarlais in his official capacity and its FINANCE DIRECTOR, Thomas Mattos in his official capacity,
By its attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

John J. Cloherty, # 5068
Ten Winthrop Square
Boston, MA 02110
(617) 350-0950

Providence Office:
128 Dorrance St., Suite 400
Providence RI 02903

I hereby certify that a true copy of the above document was served upon (each party appearing pro se and) the attorney of record for each (other) party by ~~mail~~ fax (by hand) on 5/23/06.